**FILED**
**Apr 20, 2023**
**02:27 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT GRAY

| | | |
|---|---|---|
| **SEAN CARDEN,** | ) | **Docket Number: 2022-02-0200** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 88638-2021** |
| **LOWE'S HOME CENTERS, INC.,** | ) | |
| **Employer.** | ) | **Judge Brian K. Addington** |

---

## EXPEDITED HEARING ORDER

---

The Court heard Mr. Carden's request for temporary disability and additional medical benefits, as well as attorney's fees and penalties, on April 11, 2023. After reviewing the evidence and arguments, the Court finds that Mr. Carden is likely to prove at trial that he is entitled to the requested benefits.

### Claim History

On November 19, 2021, Mr. Carden and two other employees were loading a refrigerator onto a utility trailer. Mr. Carden lost his balance and fell, hitting his head on the trailer. The refrigerator landed on Mr. Carden, and he briefly lost consciousness. When he awoke, he experienced pain in his neck, shoulder, low back, and left leg. He reported his injury to Lowe's and was told to go to urgent care. From urgent care, he was transported by ambulance to the emergency room.

Lowe's offered a panel, and Mr. Carden selected Dr. Bart McKinney. He treated Mr. Carden's shoulder and released him to work with one- to two-pound lifting restrictions and referred him to neurosurgeon Dr. Rebekah Austin for his neck, back and leg pain.[1] Lowe's covered treatment with Dr. Austin, including a partial course of physical therapy.[2]

---

[1] Mr. Carden testified that Dr. McKinney paused his shoulder treatment until Dr. Austin finished treating his neck. The record did not include Dr. McKinney's medical notes.

[2] Mr. Carden was hospitalized for COVID-19 during his physical therapy. Dr. Austin's notes mention that therapy did not resume after he recovered.

In February 2022, Lowe's sent Mr. Carden a written offer of temporary transitional work in the "Front End Department." At the hearing, Mr. Carden testified that he had worked in the front department from time to time and knew that the position required lifting more than two pounds. He stated that Dr. Austin advised him against working in that position, and he informed his case manager that he would not accept the offer. He said his neck, arm, and back pain have persisted since the injury and described how the pain continues to impact his daily life.

In June, Dr. Austin sent Mr. Carden to pain management for injections, but Lowe's did not authorize them. In August, Dr. Austin ordered a lumbar MRI that was also denied by Lowe's.[3]

Afterward, orthopedist Dr. Richard Duncan performed an employer's examination for Lowe's. In his report, Dr. Duncan noted:

> There is no evidence of prior injury or preexisting conditions. I think trying an epidural steroid injection on the left at C6 would be reasonable, but I would not suggest anything surgical. . . . Strictly from a spine standpoint he could return to work light duty at this juncture no heavy lifting pushing and pulling greater than 20-25 [pounds]. There is no objective evidence of any anatomical change that occurred with his injury. He does not have a discrete radiculopathy either by exam or by EMG that would suggest his narrowing on the left at C5-6 or C6-7 is causing his arm pain.

Based solely on Dr. Duncan's recommended restrictions, Lowe's sent a second offer of temporary employment to Mr. Carden on August 18. Mr. Carden testified that he declined the second offer because he felt the duties exceeded Dr. Austin's work restrictions. Lowe's stopped paying temporary disability benefits on August 18.

In September, Lowe's sent a letter to Dr. Austin to clarify her opinions on causation and the need for treatment. Lowe's first asked whether she agreed with Dr. Duncan that there was no objective evidence of any anatomical change due to the work injury. Dr. Austin responded "no" and supported her answer by referring to Mr. Carden's cervical MRI and current symptoms.

Next, Lowe's asked if she agreed that his neck problems were degenerative in nature. She responded that the degeneration accounted for less than twenty-five percent of Mr. Carden's current condition, given that he did not report pain before the injury. She believed that Mr. Carden had "suffered a permanent exacerbation of underlying disc disease," and she did not agree with Dr. Duncan that the injury was not a major contributing

---

[3] Lowe's approved and Mr. Carden had a lumbar MRI in February 2023. However, Lowe's offered no explanation for its failure to provide injections or why it took months to authorize the MRI.

factor (more than fifty percent) of Mr. Carden's current neck pain. When asked about Mr. Carden's back pain, Dr. Austin said that she could not give an opinion regarding the degenerative nature of his back until he had a lumbar MRI.

Dr. Austin saw Mr. Carden for a final time in October and again referred him for injections.

The parties took Dr. Austin's deposition in March 2023. Regarding work status, she stated, "We've talked along the way about his work, I believe, even from the beginning. And I didn't think he was a suitable candidate to return to work until he got his pain under control." She said that Mr. Carden is in severe pain, and she was frustrated that he has not received treatment that could improve his ability to return to work. Dr. Austin concluded, "I would keep him off work until I was able to ascertain whether we're going to be able to get him better. . . . I would be willing to entertain a job description. I [haven't] been presented with anything like that."

When asked her opinion on Mr. Carden's low back, Dr. Austin responded that while the lumbar MRI done in February showed spinal degeneration, "[H]e had a thirty-year history of no pain in his back.[4] And then he's had pain in his back since that time [injury date], so I think it would be an exacerbation of his underlying degenerative condition." She stated that slightly more than thirty percent of his back problems were degenerative.

As to pain management, Dr. Austin noted that Mr. Carden never received the treatment she recommended a year earlier. If he had, "It would have affected his outcome," and she pointed out that Dr. Duncan also noted that the neck injections were reasonable. She recommended that Mr. Carden treat his cervical and lumbar spine with injections and physical therapy for now.

Mr. Carden requested temporary disability benefits from August 19, 2022, medical treatment for his neck and back, and penalties for Lowe's failure to timely provide benefits. Lowe's contended that he was not entitled to temporary benefits because he refused employment and that back treatment should be denied because he had not presented medical proof that his injury was the primary cause of his lumbar condition.

### Findings of Fact and Conclusions of Law

To receive the requested benefits, Mr. Carden must show that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2022).

---

[4] Mr. Carden gave a history of brief back pain approximately twenty-five to thirty years before his current injury. He testified that he received chiropractic treatment, and the pain completely resolved.

*Temporary Total Disability Benefits*

To qualify for temporary disability benefits, Mr. Carden must show: (1) he became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and inability to work; and (3) the duration of the period of disability. *Hibbitts v. Royal d/b/a Royal Guttering*, 2021 TN Wrk. Comp. App. Bd. LEXIS 10, at \*6 (Mar. 23, 2021).

An employee's entitlement to temporary total disability benefits ends when he either reaches maximum medical improvement or can return to work. *Smith v. TrustPoint Hosp., LLC*, 2021 TN Wrk. Comp. App. Bd. LEXIS 1, at \*22 (Jan. 26, 2021). However, an injured worker may be entitled to temporary partial disability benefits if he is not at maximum medical improvement and cannot earn what he was making at the time of the injury. Tenn. Code Ann. § 50-6-207(2).

Lowe's contested Mr. Carden's entitlement to temporary partial disability benefits because he refused its offers for transitional work. However, he was never released to work by Dr. Austin, his authorized neurosurgeon. In its first offer, Lowe's relied on Dr. McKinney's restrictions, but Dr. McKinney only provided treatment for Mr. Carden's shoulder injury. He referred Mr. Carden to Dr. Austin for his neck, arm, and back injuries, and Dr. Austin testified that she did not feel he was "suitable to return to work" at that time. Therefore, the Court finds that Mr. Carden rightfully declined Lowe's first work offer.

In its second offer, Lowe's relied solely on restrictions provided by Dr. Duncan, its independent medical evaluator. Lowe's urged that Dr. Duncan's restrictions "took into consideration Dr. McKinney's [one-to-two pound] work restrictions" and because Dr. Austin did not specifically define any restrictions, it was acceptable to offer employment based on Dr. Duncan's restrictions. The Court is unpersuaded.

Lowe's never provided a copy of the job description to Dr. Austin so that she could address whether she believed Mr. Carden could safely perform the job. Lowe's also failed to ask Dr. Austin whether she agreed with Dr. Duncan's restrictions, and if not, that she provide specific physical restrictions herself. Finally, Mr. Carden knew by history that the job required lifting that would violate Dr. Austin's opinion that he was not ready to return to work. Thus, Mr. Carden justifiably refused Lowe's second offer.

Lowe's paid Mr. Carden temporary benefits from the date of injury through August 22, 2022, at the rate of $356.00. The Court finds Mr. Carden was entitled to benefits from August 19, 2022, April 20, 2023. This represents thirty-five weeks of benefits or $12,460.

*Medical Treatment*

The medical evidence showed that Mr. Carden suffers from a degenerative back condition. Lowe's contended that Mr. Carden's back pain is primarily due to this degeneration, not his work injury, and thus it is not required to provide medical treatment. However, this argument fails to consider whether Mr. Carden suffered a compensable aggravation of this pre-existing condition.

For an aggravation to be compensable, the Workers' Compensation Law requires an injured worker to show "[T]o a reasonable degree of medical certainty that the aggravation arose primarily out of an in the course and scope of employment." Tenn. Code Ann. § 50-6-102(12)(A).

Lowe's pointed to Dr. Austin's testimony where she commented that, based on Mr. Carden's age, it was likely that degenerative changes were present in his back before the injury and that the degeneration could have served as a contributing factor for his current problems. However, Dr. Austin also testified that she would assign "[s]lightly more than thirty percent" of Mr. Carden's back problems to his degenerative state at the time of the injury.

Lowe's did not offer expert witness testimony to counter Dr. Austin's opinions, but rather relied on Dr. Duncan's written opinion. Even though Dr. Austin's opinions do not quote the exact language in section 50-6-102(12)(A), the Court finds that her opinions and the evidence in the record as a whole support her opinion over that of Dr. Duncan. The Court holds that Mr. Carden is entitled to low back treatment recommended by Dr. Austin. *See Lewis v. Molly Maid*, 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *6-9 (Apr. 20, 2016).

Considering the facts above, the Court holds that Mr. Carden is likely to prevail at a hearing on the merits showing his entitlement to temporary disability and medical benefits.

*Compliance Program Referral*

The Bureau's Compliance Program is authorized to assess penalties under the Workers' Compensation Law and the General Rules of the Workers' Compensation Program. The Court refers this case to the Compliance Program for possible penalty assessments regarding its handling of Mr. Carden's claim. Specifically, the Program should consider: 1) whether Lowe's failed to timely pay benefits under section 50-6-205 and 2) failed to provide medical treatment made reasonably necessary by accident and recommended by an authorized treating physician under section 50-6-118.

5

*Attorney's Fees*

The Court reserves the issue of attorney's fees under Tennessee Code Annotated 50-6-226(d)(1)(B) at this interlocutory stage. *See Travis v. Carter Express, Inc.,* 2019 TN Wrk. Comp. App. Bd. LEXIS 25, at *10 (June 24, 2019) (A decision to award attorney's fees at an interlocutory stage of a case should be made "only in extremely limited circumstances."). Mr. Carden may bring the issue before the Court at a Compensation Hearing.

It is **ORDERED** as follows:

1.  Lowe's shall pay Mr. Carden temporary total disability benefits from August 19, 2022, to April 20, 2023, which represents thirty-five weeks at a rate of $356.00 per week or $12,460.

2.  Lowe's shall provide further medical treatment including but not limited to pain management for consideration of neck and back injections as recommended by Dr. Austin.

3.  The case is referred to the Compliance Program for investigation as outlined above.

4.  This case is set for a Status Hearing on **June 12, 2023,** at **10:00 a.m.** Eastern Time. The parties, or their counsel, must call **855-543-5044** to participate. Failure to call may result in a determination of the issues without the party's participation.

5.  Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED April 20, 2023.**

/s/ Brian K. Addington
_____
**BRIAN K. ADDINGTON, JUDGE**

6

Exhibits:
1. Affidavit of Mr. Carden
2. Amended Affidavit of Mr. Carden
3. Employee's Exhibits
   a. Referral to pain management
   b. MRI Order
   c. Referral to pain management
   d. Correspondence
   e. Medical Questionnaire
   f. Dr. Rebekah Austin medical records
4. Dr. Richard Duncan employer's examination report
5. Written offers of employment
6. Dr. Rebekah Austin Medical Questionnaire
7. Deposition transcript of Dr. Rebekah Austin

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Hearing Request
4. Employer's Notice of Witnesses and Exhibits
5. Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on April 20, 2023.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| David Miller, Employee's Attorney | | | X | dmillerlaw@embarqmail.com awoodall2@aol.com |
| Courtney Statham, Employer's Attorney | | | X | cjstatham@mijs.com pehampton@mijs.com |
| Compliance Program | | | X | WCCompliance.Program@tn.gov |

_____
**PENNY SHRUM, COURT CLERK**

7

[wc.courtclerk@tn.gov](mailto:wc.courtclerk@tn.gov)



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*